IRENE LETTIE TRACY, complainant-appellant,

*v.*

WORTH TRACY, defendant-respondent.

[Submitted February 4th, 1947.  Decided September 12th, 1947.]

Messrs. Rothbard, Harris & Oxfeld (Mr. Samuel L. Rothbard, of counsel), for the complainant-appellant.

Mr. John E. Selser, for the defendant-respondent.

The opinion of the court was delivered by

FREUND, J.

This is complainant's appeal in a separate maintenance suit from an interlocutory order advised by the court below "(1) denying her support *pendente lite,* and (2) vacating the writ of *ne exeat* previously issued, ordering the refund of $1,000 cash bail, and canceling the bail bond."

On May 20th, 1946, the complainant filed her verified complaint for separate maintenance, whereupon an order was advised "that a writ of *ne exeat republica* be awarded against the said defendant until he shall fully answer the complainant's bill, * * * in the sum of $2,500. * * *"

The defendant by his answer pleaded, *inter alia,* that "complainant did condone said acts alleged by continuing matrimonial cohabitation with this defendant" and "that on the 23rd day of July, 1945 * * * defendant was divorced * * * from the complainant herein" by a Mexican decree.

The complainant wife gave notice of an application for (1) the support and maintenance of complainant *pendente lite,* (2) that the amount of the bail be increased, and (3) leave to file an amended bill of complaint by adding a second cause of action to declare null and void the divorce which defendant claims to have obtained in Mexico. Subsequently the defendant gave notice of motion to (1) strike the bill of complaint on the ground that the same sets up no cause of action, (2) for an order vacating the writ of *ne exeat* for the reason that it was improvidently issued, and (3) for an order directing the sheriff to pay to the defendant the sum of $1,000, the cash bail posted by the defendant.

Upon the hearing of the respective motions, an order was entered denying all motions but granting leave to the complainant to file an amended bill of complaint.

Thereafter, complainant filed her verified amended bill of complaint alleging three causes of action against the defendant (1) for separate maintenance, (2) to declare null and

void the defendant's Mexican decree of divorce, and (3) alternatively, for support based upon a provision in the Mexican decree that the husband pay to his wife the sum of $100 each month.

The defendant then filed and served on the complainant a petition, together with an order to show cause why the amended bill of complaint should not be stricken, for an order vacating the writ of *ne exeat* and directing the sheriff to pay the sum of $1,000 to Paul Brown, surety on the bond.

The complainant's solicitor, anticipating that the defendant's motion to vacate the writ of *ne exeat* might be granted, wrote a letter to the advisory master and sent a copy to the defendant's solicitor, requesting of the advisory master that, should he decide to vacate "the writ of *ne exeat* and to return the cash bail to defendant, * * * that in order to preserve the subject-matter, to wit, the cash bail, pending an appeal * * * that said order contain a provision that the sheriff shall not pay over the cash bail until the time for an appeal from the order has expired * * *." The letter's obvious purpose was to secure a stay to preserve the subject-matter pending the disposition of the appeal.

The advisory master filed his conclusions and advised the order from which the appellant now appeals.

On the same day the last mentioned order was advised, the wife's solicitor again wrote to the advisory master stating that an appeal from said order was to be taken and requesting that "the $1,000 cash bail be preserved pending the decision" of this court and for "an opportunity to be heard as to the language of any order to be entered, and that your Honor refrain from entering an order *ex parte.*"

The advisory master, in denying complainant's application for maintenance *pendente lite,* predicated his findings upon complainant's affidavit of August 9th, 1946, admitting to having received $5,075 from defendant between the time she separated from him in May, 1944, and October, 1945, since which latter date appellant says she has not received any maintenance money from respondent. Upon the basis of complainant's affidavit, the advisory master found that "she received approximately $181 per month from him during that period" and "if complainant has conserved these funds * * *

by maintaining herself at a rate not exceeding an average of $100 monthly, she is without need of maintenance *pendente.*" We do not agree with the advisory master's reasoning or conclusion in this regard. The appellant had a right to assume that her husband would continue the monthly payments for her support and that the whole amount of each monthly payment might be expended in the particular month in which the maintenance money was received. The complainant by her affidavit says that she is in ill health, being obliged to breathe through a tube inserted in her throat, and that she is unable to obtain any gainful employment, which is corroborated by the affidavit of complainant's physician, who states that complainant is in need of an operation and is in no condition to work. The complainant further says in her affidavit that respondent earns about $800 a month, which respondent does not deny, although the respondent says that he is unemployed, having been discharged from his employment, caused by his arrest under the writ of *ne exeat.* The respondent, in his defense, relies upon a Mexican divorce decree entered on July 23d, 1945, which contains a provision for the payment by the respondent to the complainant of $100 a month for maintenance, which payments respondent continued to pay until October, 1945. It is not to be assumed that we recognize the Mexican divorce decree, as it is not before us, but it would seem that such provision in a decree awarded on the respondent's application is indicative of the respondent's intention to support complainant and pay her the moneys therein agreed to be paid. In maintenance suits, the court looks into the merits of the application as disclosed by the pleadings and affidavits and is thereby guided in the exercise of its discretion. The payments voluntarily paid by respondent to complainant and the provision for maintenance in the Mexican decree clearly disclose the intention of the respondent to pay at least $100 each month. We think that the application for maintenance *pendente lite* should have been granted and, when appellant made application to this court, we ordered, *inter alia,* on December 13th, 1946, that respondent pay to appellant the sum of $100 each month for maintenance pending the present appeal. *Amos* v. *Amos, 4 N. J. Eq. 171; Paterson* v. *Paterson, 5 N. J. Eq. 389;*

*Marker* v. *Marker*, 11 N. J. Eq. 256; *Vreeland* v. *Vreeland*, 18 N. J. Eq. 43; *Barefoot* v. *Barefoot*, 83 N. J. Eq. 685; *Segal* v. *Segal*, 104 N. J. Eq. 457; *Richman* v. *Richman*, 129 N. J. Eq. 114; *Rodie* v. *Rodie*, 138 N. J. Eq. 470; *Barnes* v. *Barnes*, 138 N. J. Eq. 504.

The respondent argues that the allowance for maintenance should not have been made by the court below until final disposition of the issues raised by the defendant in that (1) he was divorced from complainant by a Mexican decree and that said decree of divorce granted to him was in full force and effect; and (2) that the court below was without jurisdiction in this cause. There has been no final hearing and, if the contention of the respondent is correct, then maintenance *pendente lite* would never be awarded to a deserving wife.

The advisory master, in dismissing the writ of *ne exeat* held that "when complainant amended her bill, by including an additional and wholly unrelated cause of action, the surety's liability ceased," and relied upon *Penny* v. *Penny*, 88 N. J. Eq. 160. This case, however, is distinguishable from the present appeal. In *Penny* v. *Penny*, *supra*, the petitioner's original petition prayed for a divorce *a mensa et thoro* on the grounds of extreme cruelty and for alimony. A writ of *ne exeat* issued and, upon being apprehended, the defendant entered into a bond with the respondent as surety. Being unable to substantiate the charges at the hearing, the petitioner asked and was granted leave to amend by setting up another cause of action and, upon the amended pleadings and proof, a decree was made awarding alimony. Vice-Chancellor Backes held "that an entirely new cause of action was set up by the amended pleading is manifest." The surety on the *ne exeat* bond then claimed exoneration, alleging as a reason therefor that the decree for alimony was awarded on the amended petition, substituting a cause of action other than the one pleaded when the bond was given. This is the distinguishing feature between the instant case and *Penny* v. *Penny*, *supra*, which was also pointed out by this court in *Paparo* v. *Farber*, 107 N. J. Law 316.

In the instant case, the final hearing has not taken place and the original suit for separate maintenance is one of the

issues still to be tried. The complainant's allegation of fraud perpetrated by the defendant in securing a Mexican divorce decree relates to the marriage relationship of the parties, which was originally pleaded. The original cause of action might eventually be the basis for a decree and it was premature to advise an order discharging the writ of *ne exeat* and ordering the return of the $1,000 cash bail. There can be no question but that the liability of the surety is limited to his original obligation. When the bail is subject to different or additional responsibility or is otherwise placed in a situation which materially changes the legal nature of his obligation, such additional responsibility operates to discharge the bail, unless the decree is entered on the demand pleaded at or before the giving of the bail. The surety is not liable for a cause of action different from that which is stated in the pleadings at the time of the giving of the bond. In *Paparo v. Farber, supra,* this court approved the language in *Seeley* v. *Brown, 14 Pick.* (*Mass.*), *177* (at *p. 180*), by Judge Wilde, reading as follows:

"Now, if the amendment might embrace a new demand, yet as judgment was rendered on the original demand only, the bail are not liable but to that extent, and cannot therefore be injured by the amendment. To hold the bail discharged under these circumstances would be going quite too far."

The appellant further argues that the court erred in denying complainant's motion to increase the bail required on the writ of *ne exeat*. Upon the filing of the bill, an order was entered that the defendant give bail in the sum of $2,500. Within two days after the defendant was apprehended, he applied *ex parte* for an order, which was advised, reducing the bail required to $1,000 based on the defendant's affidavit which merely stated "I am unable to furnish a bond in the said amount of $2,500 and do not believe that I can raise the said sum in any manner whatsoever." There is not a scintilla of proof in the defendant's affidavit of his assets and liabilities, nor is there other proof to form a basis for the conclusion that the bail should be reduced to any amount below $2,500. The defendant's affidavit is evasive and merely states his own conclusions, that he cannot comply with the

court's order to furnish a $2,500 bond. However, it was within the discretion of the advisory master to reduce the bail and, as the appellant does not charge the abuse of discretion, it must be assumed that the advisory master acted with reasonable discretion.

The next point argued is that the court erred in denying complainant's request to include in the order for the refund of the cash bail, suitable provision for a stay pending the appeal. The order for the refund of the bail money directed the sheriff to pay to the surety the bail money which had been posted in cash. To protect the subject-matter of the appeal from being destroyed, the solicitor for the complainant applied to the court below to make suitable provision for a stay pending this appeal. *Chancery Rule No. 161; Helbig* v. *Phillips, 109 N. J. Eq. 546.* Mr. Justice Heher, in an opinion for this court in *Christiansen* v. *Local 680 of the Milk Drivers, &c., 127 N. J. Eq. 215* (at *p. 219*), said: "* * * we deem it to have been the duty of the Chancellor to award such relief as was requisite for the preservation of the subject-matter of the controversy pending the determination of the right on final hearing. * * * This power is exercised whenever necessary to subserve the ends of justice. And it goes without saying that justice is not served if the subject-matter of the litigation is destroyed * * *." We hold that the stay requested should have been granted to preserve the *status quo,* particularly where the defendant did not show that exceptional hardship would have resulted in granting complainant's request. By granting a stay and withholding the bail, no harm would have resulted to the defendant, although great injustice might result to the complainant if she should succeed in her original cause of action.

The order appealed from is modified, and the cause remanded to the court below for further proceedings in accordance with this opinion.

*For affirmance*—McGEEHAN, J. 1.

*For modification*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, WELLS, DILL, FREUND, McLEAN, JJ. 11.