189 N.J. Super. 172 (1983)
459 A.2d 693
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARIO C. WEISSENBURGER, DEFENDANT. IN THE MATTER OF THE APPLICATION OF INTERNATIONAL FIDELITY INSURANCE COMPANY, APPLICANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1983.
Decided May 9, 1983.
*173 Before Judges MICHELS and PRESSLER.
Richard P. Blender argued the cause for appellant.
James F. Keefe, Asst. County Counsel, argued the cause for respondent (Robert C. Doherty, Union County Counsel, attorney).
The opinion of the court was delivered by PRESSLER, J.A.D.
Appellant International Fidelity Ins. Co. (International) appeals from an order of the Law Division remitting $50,000 of a previously forfeited $75,000 bail and permitting the County of Union to retain $25,000. We reverse.
In May 1981 defendant Mario Weissenburger was released pending trial on $75,000 bail. International, as surety, and Weissenburger, as principal, executed the bail bond, which, in usual form, conditioned the obligation upon Weissenburger's *174 undertaking not to leave the jurisdiction and to appear in court as required.
During the following months Weissenburger entered into negotiations with the Union County Prosecutor which resulted in an agreement between them reached in September 1981. By that agreement defendant undertook to cooperate with two of the prosecutor's investigators in order to assist them in obtaining evidence against suspected major distributors of controlled dangerous substances. He also agreed to testify against them. In return, the prosecutor agreed to provide protection for defendant and his girlfriend Laurette Cherry, and to relocate them and provide new identities for them if necessary. The prosecutor further agreed, following defendant's full cooperation, to move for the dismissal of all pending charges against him, including those to which he had already pleaded guilty. This agreement was reduced to writing by way of a detailed letter dated September 24, 1981, from defendant's attorney to the assistant prosecutor in charge of the matter. Both the assistant prosecutor and defendant signed the letter at its foot, signifying that "the terms herein are satisfactory." The specific terms set forth in the letter, which are critical to the issues here, are as follows:
If it appears necessary (at the discretion of the State), Mario Weissenburger will be permitted to relocate before the disposition of indictments resulting from his cooperation. Only under an emergent threat to his or Laurette Cherry's life can Weissenburger or Laurette Cherry relocate on their own. After relocating, he must make immediate contact with the State authorities. If the State authorities determine that the threat upon his or Laurette's life was not valid when he relocated, the State's agreement with him will be void.
Four days later, on September 28, 1981, the assistant prosecutor wrote to defendant's attorney requesting his consent to the following stated clarification of the agreement:
If Mario Weissenburger leaves this jurisdiction because of an emergent threat to his safety and if an investigation reveals that no such threat existed and Weissenburger's flight was to avoid compliance with this agreement and the imposition of sentence, it is understood that all obligations of the State cease and Weissenburger will be returned to this jurisdiction for the imposition of sentence.
*175 Defendant's attorney replied by letter agreeing to this clarification. International was never advised of this agreement.
It appears that defendant did in fact thereafter cooperate with the investigators, making at least one substantial purchase from a distributor under police surveillance and instruction, which resulted in the distributor's arrest. Several days following that transaction and only a day or two before he was to appear in court for sentencing on the charges to which he had already pleaded, he fled the jurisdiction with Laurette Cherry. For the next several months, and until he was located by International and returned by it to New Jersey for sentencing, he remained in California. His whereabouts were not, during this period, known to the prosecutor. Upon his return, he was sentenced to a probationary term on the outstanding charges. In the meantime, the bail had been declared forfeited.
The actual circumstances surrounding defendant's flight from New Jersey appear to be in some dispute. According to defendant's affidavit, filed in support of International's motion for remission of the forfeiture, he was told by at least three reliable persons that the distributor whose arrest he had caused realized that defendant had "set him up" and had consequently arranged to have defendant killed. Defendant, as he asserts, panicked when he received this information and reported it to his attorney, advising his attorney that he was going to flee with Laurette and requesting him to notify the assistant prosecutor of the threats which had been made against him in order that they might be investigated. This conversation is confirmed by the affidavit filed by defendant's attorney in these proceedings, which also avers that the attorney, during the several weeks immediately following the flight, was in regular communication with defendant and the prosecutor but that "prosecutor's office took no action or investigation." This record does not include a statement by the prosecutor as to these matters. It does, however, appear therefrom that on the original sentencing date, which was after the flight, defendant's attorney and the prosecutor met in chambers with the assignment judge. The prosecutor *176 stated at that time that he did not believe the threats had been made. Consequently, a bench warrant against defendant was issued and the bail forfeited. It does not appear, however, that the prosecutor had actually investigated the threats.
In our view, the truth of the circumstances of defendant's flight from this jurisdiction is immaterial to what we regard as the critical issue here. The dispositive and undisputed fact is that the prosecutor, by way of the agreement with defendant and without notice to the surety, materially altered the condition of the bond and hence the risk and obligation of the surety by authorizing defendant to flee the jurisdiction upon his own determination that an emergent threat against him had been made.
It is well settled that a bail bond constitutes a surety agreement in which the defendant is the principal and the creditor is the State. Consequently, the legal principles applicable to the construction and consequences of surety agreements are equally applicable to bail bonds. See State v. Rice, 137 N.J. Super. 593, 600 (Law Div. 1975), aff'd o.b. 148 N.J. Super. 145 (App.Div. 1977). And see United States v. Martinez, 613 F.2d 473, 476 (3 Cir.1980). It is also well settled that if the principal and creditor modify their contract without the consent of a compensated surety, the surety will be discharged if the modification materially increases his risk. Restatement, Security, § 128 at 340-341 (1941). New Jersey law is in accord with the Restatement view. See, e.g., Langeveld v. L.R.Z.H. Corp., 74 N.J. 45 (1977); Monmouth Lumber Co. v. Indemnity Ins. Co. of N. America, 21 N.J. 439 (1956); Tracy v. Tracy, 140 N.J. Eq. 496 (E. & A. 1947).
There can be no question that the agreement here reached between defendant and the prosecutor, acting with apparent authority for the State, materially increased the surety's risk of defendant's nonappearance. Insofar as the surety was aware, defendant was required to remain in New Jersey and had undertaken to appear in court as required and to *177 remain in New Jersey unless otherwise permitted by the court on notice to it. The agreement, however, authorized defendant to exercise his own discretion and judgment in determining whether the nature and circumstances of an emergent threat warranted his flight without his having to give prior notice either to the prosecutor or to the court. That authorization itself materially increased the surety's risk, whether or not defendant ultimately exercised his authorized discretion properly. It is further clear that the risk created by the agreement was in fact the cause of defendant's nonappearance and of the consequent bail forfeiture since whether or not defendant properly exercised his right under the agreement, he nevertheless relied on the agreement in taking flight without prior notice.
Since we have concluded that the prosecutor's agreement requires the release of the surety, it is clear that the forfeiture must be set aside and the full amount of the bail remitted. Accordingly, we do not address International's argument that the amount of the remission ordered by the trial judge constituted a mistaken exercise of discretion under the principles of State v. Peace, 63 N.J. 127 (1973), and State v. Hyers, 122 N.J. Super. 177 (App.Div. 1973).[1]
Finally, we note that there is apparently a dispute between International and defendant's mother, who posted $25,000 with International as a condition of its issuance of the bail bond and who objects to that sum being first applied by International towards the unremitted portion of the forfeiture and International's expenses in finally producing defendant. That dispute is not, however, properly before us and all interested parties remain free to pursue any appropriate remedy in respect of that posting.
*178 The order appealed from is reversed and we remand for entry of an order remitting to International Fidelity Insurance Company the full amount of the forfeited bail.
NOTES
[1] We note that the quantum of the remission was the only issue raised by International on appeal. We raised the issue as to the release of the surety by reason of the prosecutor's agreement on our own motion at oral argument, giving the parties an opportunity to submit supplemental briefs with respect thereto.