799 A.2d 685 (2002)
352 N.J.Super 139
STATE of New Jersey, Plaintiff-Respondent,
v.
Bulent CEYLAN, Defendant, and
Amwest Surety Insurance Co., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2002.
Decided June 20, 2002.
*686 Richard P. Blender, Paterson, argued the cause for appellant.
Simon Louis Rosenbach, Assistant Prosecutor, argued the cause for respondent (Glenn Berman, Middlesex County Prosecutor, attorney; Mr. Rosenbach, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA, and PAYNE.
The opinion of the court was delivered by PAYNE, J.S.C. (temporarily assigned).
Defendant Amwest Surety Insurance Co. (Amwest) appeals from the denial of its motion seeking surrender and exoneration on a recognizance bond issued by it. We reverse.
Two and one-half months after an arrest on a charge of second-degree eluding, N.J.S.A. 2C:29-2b, and subsequent release from custody on bail,[1] on November 13, 1999, defendant Bulent Ceylan, a native of Turkey, was arrested and later indicted on a charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4a. Although the two charges were unrelated, both were allegedly precipitated by defendant's abuse of alcohol, cocaine and ecstasy. Bail was set on the manslaughter charge at $500,000, which defendant met by obtaining a recognizance bond secured by Amwest Surety Insurance Company (Amwest).
*687 On November 3, 2000, defendant was found guilty following trial of the eluding charge. Sentencing was scheduled for December 18, 2000. New bail pending sentencing was thereafter set by a different judge in the amount of $200,000. It was met by defendant on November 8, 2000 by posting a property bond. On December 8, prior to sentencing, defendant voluntarily appeared with his attorney on a motion to adjourn that sentencing for six weeks so that defendant could spend the holidays with his family, work during the peak season of his jewelry business, and obtain the removal of pins inserted to treat orthopedic injuries sustained in the motor vehicle accident giving rise to the aggravated manslaughter charge.
Amwest, which had received late notice of defendant's adjournment motion, appeared in court and, in defendant's presence, moved pursuant to R. 3:26-7 to surrender defendant and to obtain exoneration on the bond issued by it on the manslaughter charge, arguing that the admission of defendant to bail following the verdict of guilty on second-degree eluding charges that carried with them a presumption of imprisonment for a term of five to ten years, combined with the enhanced possibility that defendant would flee to his native Turkey, a country without an extradition treaty with the United States, constituted a material increase of Amwest's risk, justifying the relief sought. The court denied both defendant's motion for an adjournment of sentencing and Amwest's motion for surrender and exoneration. Although the court acknowledged that a material increase in the risk had occurred, it was apparently satisfied that the increased risk had been addressed by the new $200,000 bail set in the eluding matter.
Fulfilling Amwest's predictions, defendant failed to appear either at his sentencing for eluding or at a status conference scheduled in the manslaughter case for the same day. Bail on both charges was forfeited pursuant to R. 3:26-6, but Amwest's motion for a stay of enforcement of the forfeiture pending appeal was granted. It was represented by the State at oral argument of this appeal that defendant has returned to Turkey and maintains occasional telephone contact with the Prosecutor's office from there.
We find the trial judge's denial of Amwest's motion for surrender and exoneration, although commendably humane, to have constituted an abuse of discretion, requiring reversal. As even the court acknowledged, the post-verdict release of the defendant led to a material increase in his risk of flight. Amwest, as surety, legally could not be compelled to accept that increased risk, even when ameliorated by the imposition of substantial new bail.
Every case in which the relief of surrender and exoneration is sought by a surety exposes the tension between the surety's contractual obligation to the State to supervise, control, monitor and produce a defendant at all stages of a criminal proceeding or forfeit its bond and the surety's good-faith duty to the defendant to permit that defendant to remain free so long as the contractual undertaking between the defendant and the surety remains unchanged and compliance with the conditions of the bond occurs. That tension is particularly apparent here since the occasion for the requested surrender and exoneration existed only because defendant voluntarily appeared in court to seek an extension of his period of freedom prior to sentencing in another matter on which he had been admitted to post-verdict bail. Defendant clearly did not anticipate that his presence in court would provide the occasion for his surety's application for the *688 relief of surrender and exoneration in another matter.
Nonetheless, that result was required by the circumstances presented. It has long been recognized that a bail bond "constitutes a surety agreement in which the defendant is the principal and the creditor is the State." State v. Weissenburger, 189 N.J.Super. 172, 176, 459 A.2d 693 (App.Div.1983). The undertaking of a surety is defined by the terms of the bail bond and applicable law. Ibid.; State v. Vendrell, 197 N.J.Super. 232, 236, 484 A.2d 720 (App.Div.1984); R. 3:26-4(a). The primary purpose of the surety agreement is to ensure that the defendant will appear at all required court appearances until a final disposition of charges against him is reached. State v. Korecky, 169 N.J. 364, 373, 777 A.2d 927 (2001); State v. Rice, 137 N.J.Super. 593, 599-600, 350 A.2d 95 (Law Div.1975), order aff'd o.b., 148 N.J.Super. 145, 372 A.2d 349 (App.Div.1977). The written conditions of Amwest's recognizance bond accorded with law and established precedent.
A modification of the terms of a surety agreement by the principal and creditor without the surety's consent operates to discharge the surety, if the modification materially increases the risk assumed. Vendrell, supra, 197 N.J.Super. at 237, 484 A.2d 720; Weissenburger, supra, 189 N.J.Super. at 176, 459 A.2d 693. See also Restatement (Third) of Suretyship and Guaranty, § 41 at 184-85 (1996). We recognize that, here, the modification did not relate directly to the manslaughter charge or the bond issued in that connection. Further, at the time that Amwest underwrote the bond on the manslaughter charge, it had knowledge of the pendency of the eluding matter, and therefore can be deemed as a practical matter to have provided security against the risk of flight arising from a combination of the two charges. It is unclear whether defendant was initially released on his own recognizance in the eluding case or whether bail was set. In any event, it is reasonable to charge Amwest with knowledge of the status of bail in that matter as of the date that it signed its surety contract. If it did not know that status, as now appears to have been the case, it should have.
As we held in Vendrell, supra, the obligation of a surety to the State to assure production of a defendant at all times "until the final determination of the cause" extends its obligation until the time of sentencing and entry of the judgment of conviction. Id. 197 N.J.Super. at 237, 484 A.2d 720. See also R. 3:26-4(a); State v. Rice, supra. Because of this fact, in the absence of a material change in circumstances, a surety could not unilaterally seek surrender and exoneration simply as the result of the entry of a guilty verdict or plea and would be required to remain on the risk since the risk assumed, a risk encompassing the possibility of a finding of guilt, would not have changed. Cf. State v. Ryu, 259 N.J.Super. 87, 611 A.2d 172 (Law Div.1992). By the same token, we recognize that bail is customarily revoked following conviction by a jury on second-degree charges, since it is apparent that the risk of flight increases the moment that the fact of guilt and the certainty of a substantial period of custody are established. This markedly enhanced risk of flight could well provide a factual foundation justifying surrender and exoneration of bail.
In this case, the establishment of new bail in a substantial sum signaled recognition by the court and the State that the risk of defendant's flight had changed materially from that existing prior to trial. Defendant was now facing the virtual certainty of at least a presumptive seven-year sentence for eluding in addition to pending *689 aggravated manslaughter charges that carried with them a presumptive twenty-year jail sentence, as well as a substantial period without parole. We hold that the very factors that led the court to set new bail at the level that it did and would have impelled it to retain defendant in custody if bail were not met were those factors that should have caused it to find a material change in circumstance sufficient to warrant surrender and exoneration. A determination simply to increase bail would have had the same effect.
It is noteworthy that Amwest had no notice of the material increase in the risk perceived by the State and the court in the eluding matter, and Amwest did not consent to the concomitant increase the risk that it had assumed de facto in connection with the manslaughter charge.[2] By fortuity, defendant came within the court's reach again in connection with his voluntary appearance in connection with his application for an adjournment of sentence. Failure to grant Amwest's motion for surrender and exoneration at that time constituted an abuse of the court's discretion. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974).
The order of forfeiture of the Law Division is therefore reversed.
NOTES
[1] The record does not disclose whether defendant was released on his own recognizance or whether bail was set.
[2] It is unclear from the limited record on appeal whether defendant was remanded to custody following the jury's verdict. If he was, and if Amwest had been given notice of the remand, the company could have sought exoneration on its bond while defendant remained in custody prior to making post-verdict bail. It would have been both preferable and possible for notice of remand to have been given to Amwest if it occurred at that time, thereby eliminating any independent requirement of surrender, since the bail status of other pending charges can be determined by a court with relative ease.