825 A.2d 1155 (2003)
361 N.J. Super. 388
STATE of New Jersey, Plaintiff-Respondent,
v.
Obert CLAYTON, Defendant, and
Lexington National Insurance Company, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Corey Boyce, Defendant, and
Lexington National Insurance Company, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Henry Weaver, Defendant, and
Lexington National Insurance Company, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Jermaine McGahee, Defendant, and
Lexington National Insurance Company, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Racquel Vasquez, Defendant, and
Lexington National Insurance Company, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 2003.
Decided June 13, 2003.
*1157 John S. Furlong, Trenton, argued the cause for appellants (Furlong and Krasny, attorneys; Mr. Furlong, on the brief).
Donna M. Whiteside, Assistant County Counsel, argued the cause for respondents (Frederick J. Schuck, Camden County Counsel, attorney; Ms. Whiteside, on the brief).
Before Judges PRESSLER, CIANCIA and HOENS.
*1156 PER CURIAM.
In these appeals, which we consolidate for the purposes of this opinion, appellant Lexington National Insurance Company is a corporate surety that posted bail in Camden County for each of the five named defendants. It asserts that the trial court erred in its application of principles governing remission of forfeited bail both initially and following remands from this court. We agree and for reasons we expressed in State v. de la Hoya, 359 N.J.Super. 194, 819 A.2d 467 (App.Div.2003), we exercise our original jurisdiction to resolve the appropriate remission amounts. R. 2:10-5.
In general, we recognize that the decision to remit bail and the amount of remission are matters within the sound discretion of the trial court to be exercised in the public interest. See, e.g., State v. Peace, 63 N.J. 127, 129, 305 A.2d 410 (1973); State v. de la Hoya, supra, 359 N.J.Super. at 198, 819 A.2d 467. The exercise of that discretion must, however, be informed by the standards articulated by the courts in State v. Hyers, 122 N.J.Super. 177, 180, 299 A.2d 748 (App.Div.1973), and again in State v. Mercado, 329 N.J.Super. 265, 271, 747 A.2d 785 (App.Div.2000). Moreover, the exercise of that discretion must also be consistent with the policy concerns we identified in de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467, namely, the need to provide a reasonable incentive to the surety to attempt the recapture of the non-appearing defendant and to assure that the onus placed on commercial sureties is not so great as to risk the impairment of a defendant's realistic right to post pretrial bail. We also *1158 add that the focus of the bail forfeiture procedure is the vindication of the public interest and not primarily revenue raising.
With respect to the specific policy factors to be weighed, the primary consideration, as we held in State v. Mercado, supra, 329 N.J.Super. at 271, 747 A.2d 785, is whether the surety has made reasonable efforts under the circumstances to effect the recapture of the fugitive defendant. We also regard as particularly significant the surety's supervision of the defendant while he is released on bail. The other Hyers factors include the corporate status of the surety, the length of time during which defendant is a fugitive, the prejudice to the State and the expenses incurred by it as a result of the fugitive's non-appearance, recapture, and enforcement of the forfeiture, and whether reimbursement of the State's expenses will adequately satisfy the interests of justice. State v. Hyers, supra, 122 N.J.Super. at 180, 299 A.2d 748. The detriment to the State also includes, as our Supreme Court held in State v. Peace, supra, 63 N.J. at 129, 305 A.2d 410, an unquantified "intangible element of injury to the public interest where a defendant deliberately fails to make an appearance in a criminal case." And, as we noted in de la Hoya, a defendant's commission of another crime while a fugitive is another significant element of the State's intangible injury. See also State v. Fields, 137 N.J.Super. 76, 347 A.2d 810 (App.Div. 1975).
In exercising our original jurisdiction, therefore, we are required to apply these general standards and policy concerns to each of these cases. We note first, however, that in one of these cases, State v. Weaver, A-1338-01T3 the efforts of the surety, in our view, entitled it to exoneration. As such, the ordinary Hyers analysis does not bear upon the question of the surety's rights. We turn, then, first, to the principles applicable to that matter.
Lexington posted bail in the amount of $20,000 for Henry Weaver on February 12, 2000. He failed to appear on November 13, 2000 and a notice of bail forfeiture was issued on November 15, 2000. Investigators hired by Lexington successfully apprehended Weaver on November 28, 2000 and returned him to the custody of the Camden County authorities. Lexington filed its motion to vacate the bail forfeiture on December 15, 2000. The date of that motion is significant, for it falls within the 45 day time period set forth in R. 3:26-6(a) for filing a written objection to entry of judgment of forfeiture.[1] Because the surety filed its motion prior to the expiration of the 45 day period, by operation of the rule, default judgment should not have been entered and the forfeiture should have been set aside. R. 3:26-6(b). The appropriate application of that rule would have entitled the surety, therefore, to return of 100% of its bail.
Unbeknownst to the surety, however, following the date on which it turned Weaver over to the authorities, the judge in Camden County set aside the forfeiture on his own motion, and the judge, without notice to Lexington, then reinstated the original bail and released Weaver again. On March 26, 2001, Weaver again failed to appear and a further notice of forfeiture was sent to Lexington on April 2, 2001. The surety moved to vacate the forfeiture on the ground that the reinstatement of the bail without its knowledge or consent was improper, but its motion was denied on July 19, 2001. Investigators hired by Lexington then located and apprehended Weaver for the second time on July 25, *1159 2001 and again returned him to the Camden County authorities. The trial court in Camden, in response to Lexington's further motion to vacate the bail forfeiture, determined that the sum of $13,750 should be forfeited and the balance of the bail should be remitted. On remand, the trial judge reaffirmed his earlier decision.
We vacate that order and direct that the entire amount of $20,000 be returned to the surety. This particular application should not have been analyzed pursuant to the dictates of Mercado; Peace; Hyers and de la Hoya but, rather, should have been analyzed in accordance with the principles we enunciated in State v. Weissenburger, 189 N.J.Super. 172, 459 A.2d 693 (App.Div.1983). We there pointed out that the principles of suretyship apply to bail bonds. Id. at 176, 459 A.2d 693. It is a well-settled principle of suretyship that the surety is only chargeable according to the strict terms of its undertaking and that, as a result, its obligation cannot be extended or altered beyond the terms of its agreement. Monmouth Lumber Co. v. Indemnity Ins. Co. of N. Amer., 21 N.J. 439, 122 A.2d 604 (1956). Moreover, release or impairment of collateral acts to extinguish the surety's obligation. Langeveld v. L.R.Z.H. Corp., 74 N.J. 45, 50-51, 376 A.2d 931 (1977). As we held in Weissenburger, therefore, the unilateral alteration of the terms of the undertaking by the principal (here, Weaver) and the creditor (here, Camden County) without the consent of the surety (here, Lexington) discharged the surety if the modification materially increased the risk of the undertaking. State v. Weissenburger, supra, 189 N.J.Super. at 176, 459 A.2d 693. It could not be more plain that the court's unilateral decision to reinstate Weaver to bail was just such an increased risk. After all, he had already failed to appear, requiring the surety to apprehend him and return him to custody. Under that circumstance, it is beyond question that the surety's willingness to underwrite a further bail would have been at best debatable. The unilateral decision of the trial court thereafter to release Weaver again, his appearance secured only by the previously issued bond of Lexington, without any notice to Lexington was, from the standpoint of basic surety law, a nullity. Simply put, the court did not have the authority to effect a reinstatement of the bail bond without the consent of the surety.
Beyond that, the surety's initial prompt return of Weaver and timely motion for relief entitled it to exoneration. Plainly, when Weaver failed to appear, was apprehended by Lexington and its motion filed within the time frame then applicable under our Rule, it had completely performed its duty and should have been exonerated. The trial court erred in failing to return 100% of the bail posted under these circumstances. We therefore direct that the entire amount of the $20,000 bail be remitted to Lexington on the ground that having returned Weaver within two weeks of the original notice of his failure to appear and having moved for relief within the 45 days provided in the rule, it was entitled to have the declaration of forfeiture set aside.
In each of the other appeals the more usual analysis applies. It is undisputed that the surety supervised the individuals for whom it had posted bail. Each defendant was required to maintain regular contact with supervisors employed by the surety by phone, by mail, and in person, and the surety followed up as well with random calls and visits to their homes and their places of employment. Supervision of persons released on bail through regular contact with the surety not only assists the surety in performing its function by ensuring that it remains aware of the whereabouts of those for whom it has posted *1160 bail, but also serves to impress upon the persons released on bail the importance of appearing when and where required. The consistent and regular efforts of this surety to maintain contact with these individuals is not challenged.
Moreover, in each of these cases, the surety immediately initiated efforts to locate these defendants when notified of their failure to appear. In each case, those efforts included significant surveillance and investigations, in some instances at substantial expense. In each of these cases as well those efforts were successful reasonably promptly after they were begun and, each defendant was therefore promptly returned to the custody of the Camden authorities. We note as well that in each of these cases, the defendant was successfully recaptured prior to the commission of any further offense and, on the record before us, without any claim of expenditure of manpower or effort on the part of the State or the county authorities.
We think that the significant level of supervision, the prompt return of each of these defendants, the substantial sums expended by the surety to effect their prompt return, the absence of any further charges for offenses committed while they were at large and the lack of any demonstration by the State or the county that it undertook any efforts to locate or apprehend these individuals are significant. As we here address only the intangible harm and only such harm of the most modest duration, a substantial remission in each case is appropriate. In each of these matters remission should also be calculated so as to recognize the significant costs expended by the surety to apprehend these defendants. We, therefore, conclude that the amount to be remitted should be calculated so that the surety is first reimbursed for its costs and is then awarded 95% of the balance of the bail that remains after these costs have been deducted. We turn, then, to the specifics of these other matters.
State v. Obert Clayton (A-1334-01T3)
Lexington posted bail in the amount of $10,000 on July 19, 2000 and commenced monitoring and supervising Clayton thereafter. He failed to appear on March 2, 2001 and the notice of forfeiture was issued on March 8, 2001. The extensive efforts of the surety to locate and recapture this defendant eventually led its fugitive recovery agents to Florida where Clayton was apprehended on July 27, 2001. At the time, he was also a fugitive from Gloucester County and the surety returned him to authorities there, but advised the authorities in Camden shortly thereafter and enabled them to lodge a detainer, which assured his return for further proceedings. The surety expended $6160 in its recovery efforts. The trial court determined that only one-half of the costs to retrieve the defendant should be considered in the Camden forfeiture proceeding, theorizing that the other half was more properly to be recovered from Gloucester County. The trial court determined that the surety should be refunded one-half of the costs it incurred and $1000, ordering that the sum of $4080 should be remitted and the balance, $5920, should be forfeited. On remand, the court affirmed its original decision. We now vacate that order. The efforts to retrieve the defendant were extensive. The State has not demonstrated that it incurred any expenses to search for or retrieve this defendant. While the time between the notice of forfeiture and the defendant's return to Camden was 154 days, because he was first returned to Gloucester, the actual time he was at large was not inordinate. Moreover, the efforts to locate and apprehend this defendant were impeded by his efforts to evade capture, which lengthened the time he was at large. The surety, however, has not provided us with *1161 information on which we can determine the amount, if any, of the costs expended that have already been recovered through Gloucester County. In this circumstance, we conclude that remission of 95% of the entire bail is appropriate. Accordingly, $500 should be forfeited and the balance of $9500 should be remitted.
State v. Corey Boyce (A-1336-01T3)
Lexington posted bail in the amount of $25,000 for Corey Boyce on April 4, 2001 and commenced monitoring and supervising him thereafter. He failed to appear on May 21, 2001 and the notice of bail forfeiture was issued on May 29, 2001. The efforts by the surety to locate and apprehend him included surveillance of several locations. He was apprehended by Lexington's fugitive recovery unit and turned over to the custody of Camden authorities on July 24, 2001. The surety expended $2300 in its recovery efforts. On August 22, 2001, Lexington filed its motion to vacate the forfeiture and discharge the bail. The trial judge determined that the surety was entitled to be refunded one-half of the bail and the expenses it had incurred and ordered that the balance of $10,200 be forfeited. On remand, the trial court affirmed its original decision. We now vacate that order. The efforts to retrieve the defendant were substantial. The State has not demonstrated that it incurred any expenses to search for or retrieve this defendant. The time during which this defendant was at large was relatively short in duration, being only fifty-six days from the date of the notice of forfeiture until the date on which the defendant was returned to custody. We find that, under the circumstances, the cost to apprehend him of $2300 together with 95% of the $22,700 balance should be remitted. Using these figures, $1135 should be forfeited and the balance of $23,865 should be remitted.
State v. Jermaine McGahee (A-2630-01T3)
Lexington posted bail in the amount of $25,000 for Jermaine McGahee on July 5, 2000 and commenced monitoring and supervising him thereafter. McGahee failed to appear on August 3, 2001 and a notice of bail forfeiture was issued on August 29, 2001. Lexington's fugitive recovery team conducted an investigation to find him, including following up on false information provided by his family. The surety's efforts to capture this defendant were extensive and time-consuming and eventually he was apprehended and returned to the Camden County authorities on November 5, 2001. The surety expended $3550 in its efforts to recover this defendant. On or about November 15, 2001, the surety filed its motion to vacate the bail forfeiture. The trial court ordered that the sum of $8950 should be forfeited and that the balance of $16,050 should be remitted. On remand, the trial court affirmed its original decision. We now vacate that order. The time during which this defendant was at large was relatively brief and the surety's efforts to recover this defendant were substantial. The State has not demonstrated that it made any effort to search for this defendant. Based on our analysis, costs of $3550 and 95% of the balance of $21,450 is appropriate under the circumstances. Using rounded-off figures, $1050 should be forfeited and the balance of $23,950 should be remitted.
State v. Racquel Vasquez (A-3914-01T1)
Lexington posted bail in the amount of $25,000 for Racquel Vasquez on March 10, 1999 and commenced monitoring and supervision of her thereafter. On May 1, 2000, she did not report to the surety as required and it immediately commenced its efforts to locate her in time for her next court appearance. These initial efforts were unsuccessful, however, and on May *1162 30, 2000, she failed to appear in court. A notice of forfeiture was issued on June 16, 2000. The surety pursued numerous avenues of investigation sending its agents twice to Puerto Rico and following up on leads in Santo Domingo as well. These efforts were productive and she was apprehended by the surety in Puerto Rico on August 22, 2000, following which she was returned to the custody of the Camden County authorities. The costs incurred by the surety to locate and apprehend this defendant were $7,821.75 largely because of extensive efforts needed to locate her. The surety moved to set aside the forfeiture and the court determined that $10,900 should be forfeited and the balance of $14,100 should be remitted. On remand, the trial court affirmed this decision. We now vacate that order. The efforts to relocate this defendant by the surety's fugitive recovery agents were extraordinary. The time during which the defendant was at large was not inordinate in light of the time involved in arranging for the defendant's return from Puerto Rico. Based on our analysis, the sum of $7821.75 in costs and $16,319.34, representing 95% of the balance of $17,178.25 would be an appropriate remission. Rounding these figures off, we find that, under the circumstances, $850 should be forfeited and the balance of $24,150 should be remitted to the surety.
In each of these appeals the order of the trial court is vacated and the matter is remanded for entry of orders consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] By order entered June 11, 2002, the time frame expressed in the rule was relaxed so as to extend the time from 45 to 75 days. See Pressler, Current N.J. Court Rules, comment 1 on R. 3:26-6 (2003).