937 A.2d 314 (2007)
397 N.J. Super. 302
STATE of New Jersey, Plaintiff-Respondent
v.
Kelvis CALCANO, Defendant, and
Lexington National Insurance Company, Surety, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 2007.
Decided December 20, 2007.
*316 Richard P. Blender, Paterson, argued the cause for appellant.
Mitzy Galis-Menendez, Secaucus, argued the cause for respondent (Chasan Leyner & Lamparello, P.C., attorneys; Ms. Galis-Menendez, of counsel and on the brief; Steven L. Menaker, on the brief).
Before Judges COBURN,[1] FUENTES and CHAMBERS.
The opinion of the court was delivered by CHAMBERS, J.A.D.
Appellant, Lexington National Insurance Company (the "Surety"), appeals from the order of February 2, 2007, denying its motion to vacate a bail forfeiture. The Surety contends that bail should have been revoked when defendant Kelvis Calcano failed to keep in contact with the Surety, a condition of his bail, and that bail also should have been revoked when Calcano pled guilty to the offense and faced a mandatory prison sentence. We find no abuse of discretion in the continuation of bail under the circumstances present and affirm.
On August 23, 2001, the Surety posted a bail bond in the sum of $50,000 for Calcano, who was charged with certain drug offenses. By the end of November 2001, Calcano stopped keeping in touch with the Surety as required in the conditions of his bail. As a result, the court issued a bench warrant on December 20, 2001, for his failure to comply with bail conditions. The Surety was able to locate Calcano who was brought before the court on January 29, 2002, for a bail revocation hearing. Since Calcano had not missed a court date and a change in his residence appeared to have contributed to the problem, the court declined to revoke bail, despite objections of the Surety. The court advised Calcano that if he failed to report to the Surety as required, another bench warrant would be issued and bail would then be revoked.
On April 26, 2002, Calcano pled guilty to first-degree possession of a controlled dangerous substance with intent to distribute. He faced a sentence that would include a mandatory two-year period of parole ineligibility. The plea document he signed indicated that the prosecutor would recommend a sentence of ten years with the two years of parole ineligibility. After the plea was taken, neither the State nor the Surety moved to revoke bail.
Calcano failed to appear for his sentencing scheduled for September 13, 2002, and his bail was forfeited on that same day. The Surety was given the requisite notice of the bail forfeiture pursuant to Rule 3:26-6(a), and a default judgment on the forfeiture was entered against Calcano and the Surety for the sum of $50,000. The Surety's motion to vacate the bail forfeiture and judgment was denied by order dated February 2, 2007. Calcano still remains at large.
On appeal, the Surety contends that the trial court should have revoked Calcano's bail at the hearing on January 29, 2002, after Calcano had lost contact with the Surety. The Surety further argues that Calcano's bail should have been revoked on April 26, 2002, when he pled guilty to the charges and faced mandatory imprisonment. We reject these arguments.
*317 A bail bond is essentially a surety agreement in which the defendant is the principal and the State is the creditor; the agreement is subject to the same legal principles applicable to the construction and consequences of surety agreements in general. State v. Weissenburger, 189 N.J.Super. 172, 176, 459 A.2d 693 (App. Div.1983). A surety is bound "according to the strict terms of its undertaking," and "its obligation cannot be extended or altered beyond the terms of its agreement." State v. Clayton, 361 N.J.Super. 388, 395, 825 A.2d 1155 (App.Div.2003).
The surety will be discharged as a matter of law where the agreement has been modified without notice and consent and where the modification "materially increases his risk." State v. Vendrell, 197 N.J.Super. 232, 237, 484 A.2d 720 (App. Div.1984); State v. Weissenburger, supra, 189 N.J.Super. at 176, 459 A.2d 693 (discharging surety due to a material change in the risk created by an agreement between prosecutor and defendant requiring defendant to participate in an undercover operation and allowing defendant to flee the jurisdiction if an emergent threat to his life were present). Modifications that do not materially change the risk are permissible. See State v. Tuthill, 389 N.J.Super. 144, 149-50, 912 A.2d 146 (App.Div. 2006), certif. denied, 192 N.J. 69, 926 A.2d 853 (2007) (citing a collection of out-of-state cases where the modification did not substantially increase the risk of defendant's nonappearance and so the surety's obligations under the bail bonds were not discharged).
The Surety maintains that the trial court should not have continued Calcano's bail at the hearing on January 29, 2002. At that hearing, Calcano had been brought before the court because he had failed to keep in contact with the Surety, in breach of a condition of his bail bond. At that point, however, Calcano had not missed a court appearance. While forfeiture of bail may be appropriate for breach of a nonappearance condition of a bail bond, the primary purpose of bail is to secure defendant's appearance at court. State v. Korecky, 169 N.J. 364, 375-76, 777 A.2d 927 (2001). The trial court must therefore "weigh carefully the totality of the circumstances," when imposing nonappearance conditions, and it should "exercise the authority to forfeit a bond for a breach of such a condition sparingly." Id. at 384, 777 A.2d 927 (emphasis added) (allowing forfeiture where defendant twice threatened adverse witnesses in contravention to condition of bail prohibiting contact with these witnesses).
Under the present circumstances, where Calcano had kept in touch with the Surety for a lengthy period of time before losing contact and where Calcano had not missed any court appearances, the judge was well within her discretion to continue bail for him. The circumstances did not amount to a material change in the Surety's risk. Indeed, Calcano did appear at the next scheduled court event.
The Surety further contends that Calcano's guilty plea, under circumstances where a sentence of imprisonment was mandatory, constituted a material change in the Surety's risk and that bail should have been revoked once the plea was taken. A bail recognizance, however, is "conditioned upon the defendant's appearance at all stages of the proceedings until final determination of the matter, unless otherwise ordered by the court." R. 3:26-4(a). The "final determination" is the judgment of conviction entered at the time of sentencing. State v. Vendrell, supra, 197 N.J.Super. at 236, 484 A.2d 720. Thus, the Surety undertook an obligation to assure Calcano's appearance up until the time of his sentencing. Because the Surety's *318 undertaking continues until the defendant's appearance at sentencing, generally a guilty plea or conviction is not an enhanced risk requiring surrender and exoneration. State v. Ceylan, 352 N.J.Super. 139, 144, 799 A.2d 685 (App.Div.), certif. denied, 174 N.J. 545, 810 A.2d 64 (2002). However, when a substantial period of incarceration is a certainty, the risk of flight increases which "could well provide a factual foundation justifying surrender and exoneration of bail." Ibid.
In arguing that the court should have revoked bail after the plea, the Surety relies heavily on the holding in Ceylan. In that case, the surety posted bail on an aggravated manslaughter charge. Id. at 141, 799 A.2d 685. The defendant also had a separate charge of eluding which was not subject to the bail bond. Ibid. Defendant thereafter was found guilty of the eluding charge and faced a mandatory prison term; he posted bail on that charge with a property bond. Ibid. When defendant sought to adjourn his sentencing on the eluding charge, the surety on the manslaughter charge sought to surrender defendant and to obtain exoneration on the bond. It argued that the mandatory prison term defendant faced on the eluding charge coupled with the possibility that he could flee to his native country constituted a material increase in its risk. Id. at 141-42, 799 A.2d 685. The Ceylan court found that the trial judge's failure to grant the surety's application was an abuse of discretion. Id. at 144-45, 799 A.2d 685.
The Ceylan case is distinguishable since the increased risk in Ceylan was due to other charges and not the charge that was the subject of the bond. As noted above, the surety undertakes to secure the presence of defendant up to and including the time of sentencing on those charges on which it posted the bail. While, as Ceylan notes, the trial court may require surrender of defendant and exonerate the surety after a guilty plea when defendant faces certain incarceration, such a result is not automatic. Id. at 144, 799 A.2d 685. Here, neither the prosecutor nor the Surety applied to the court for revocation of bail once the plea was taken. No special or additional circumstances were present that would indicate a material change in the Surety's risk at that point. Accordingly, we find that the trial court's continuation of the bail under the circumstances was a proper exercise of discretion, and the motion to vacate the bail forfeiture was properly denied.
Affirmed.
NOTES
[1] Judge Coburn did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).