244 N.J. Super. 86 (1990)
581 A.2d 883
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERT KING-CHUN POON, DEFENDANT-APPELLANT, AND REBECCA YAN CHUN POON, SURETY-APPELLANT.[1]
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1990.
Decided October 17, 1990.
*87 Before Judges KING, LONG and STERN.
Louis M. Barbone argued the cause for appellants (Jacobs, Bruso & Barbone, attorneys; Louis M. Barbone on the brief).
Kenneth M. Shumsky, Assistant County Counsel, argued the cause for respondent (Terry J. Dailey, County Counsel of Atlantic County, attorney; Kenneth M. Shumsky on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
Albert King-Chun Poon, the subject of a State Grand Jury indictment (defendant), and his sister (surety) appeal from an April 7, 1989 order of the Law Division which entered judgment in favor of the County of Atlantic and against defendant in the amount of $150,000. The order further provided that the "$150,000.00 presently on deposit with the Clerk of Atlantic County be transferred ... to the Office of the Treasurer of Atlantic County for deposit." We reverse the entry of judgment *88 and remand for further proceedings relating to the forfeiture of bail posted by the surety.

I.
Defendant and 13 others were indicted by a State Grand Jury on various counts of theft and related offenses committed in furtherance of a conspiracy to violate the casino gaming laws. On June 17, 1987 defendant was arrested in California and returned to New Jersey on a warrant issued at the time of indictment. It appears that a $1,000,000 bail was set by a judge in California following defendant's arrest. According to a statement made at defendant's first appearance in New Jersey, he was "returned voluntarily by State investigators."
At his arraignment in New Jersey on July 1, 1987, a Deputy Attorney General (D.A.G.) stated his view that a $500,000 bail was appropriate given defendant's "exposure ..., if convicted, as well as the likelihood of flight in light of those penalties" and "prior history in the court system, both here and in Hong Kong." The D.A.G. indicated that defendant had a prior conviction in Hong Kong for theft and "had to be returned from the United States for that offense" and that defendant had also been placed on probation in Nevada for "a secondary matter."
Defendant's attorney explained that defendant ran two retail toy stores in California and "has significant business interests in this country." He emphasized that "Mr. Poon has voluntarily waived extradition here" and claimed that bail in the amount of $500,000 "would be excessive". The D.A.G. responded by noting that Poon did not "surrender himself to California authorities", that the authorities had a "difficult time locating" him and that "his residence is not something which, I think, is so definitively defined as to insure that he is maintaining close ties in that community" in California. Further, the D.A.G. reported that defendant had not been observed at his business premises for some time and that the indictment alleged a $2,700,000 fraud involving two casinos. He added that "even a *89 surrender of passport, immigration records ... would not preclude Mr. Poon from leaving this country." Defense counsel answered by representing that if it became necessary, defendant "would be willing ... to waive extradition from any country, from any government in order to secure his appearance in this court to meet the charges."
The court concluded that based on the allegations and exposure, a bail of "half a million dollars" was appropriate and further directed that the defendant surrender "either [his] passport, Hong Kong passport or what is referred to as identity card." Nothing was stated at that time with respect to defendant's immigration status.
Defendant retained new counsel and moved for reduction of bail on July 24, 1987. The application was heard before another judge who thereafter heard all subsequent proceedings.
Defense counsel indicated why defendant's assets could not be used to meet the $500,000 cash bail and, while acknowledging defendant had left the jurisdiction of Nevada "for five years before he answered" the charges there, his waiver of extradition on the present charges made him a "good risk." Counsel also stated that defendant had been in jail for five weeks, and it was "unjust to have him waiting while" the co-defendants were being sought outside the United States. Only two of the fourteen defendants had been arrested and were present in the jurisdiction. Defense counsel also argued that the State's case would be difficult to prove and would take a substantial period of time to try. However, in opposition to a bail reduction, the D.A.G. noted, among other things:
In 1975, while employed as a charter accountant for a bank, Mr. Poon embezzled $200,000 in Hong Kong; fled to the United States; was arrested on a warrant and returned to Hong Kong by way of extradition. He was not deported. Mr. Poon reentered the United States and has, in fact, no immigration status whatsoever. He has no green card. He is not a legal resident alien, and immigration right now is trying to figure out what they're going to do with him and they're assigning an investigator to it.

I spoke to the investigators that worked with the investigations that dealt with Mr. Poon on his first entry into this country. Mr. Poon received an *90 aggregate of five or seven years in the Hong Kong case. He did five. He returned to the United States in '82 to Buffalo. He has resided in California since then. In 1980 there was the allegation of cheating which was substantially resolved in Nevada. In 1985 he was on three years probation for that particular offense, cheating at cards ... The bottom line, Your Honor, is Mr. Poon might be willing to waive extradition from California. He could not under any circumstances be allowed to waive extradition in advance from Hong Kong or Taiwan. [emphasis added].
The court immediately asked defense counsel if his client had a passport, and counsel answered in the affirmative, stating that he had posted a $10,000 bond with the Immigration and Naturalization Service in 1985 and "has been dealing with them directly to resolve his status on the new amnesty law." Counsel further indicated that his client believed the new amnesty law applied to him and was hiring an attorney to handle his difficulties with the Immigration and Naturalization Service. Counsel stated:
He's been here since 1982. He may have had discussions with him about that. I suggested to him he hire an attorney who specializes in that field. And the answer is, I don't know. I do know he posted a ten thousand dollar bond, seems to be temporarily at peace, and that's reinforced by the statement of attorney general that they're going to start some in litigation.
The prosecutor responded by contending that defendant had assets sufficient to make the $500,000 bail and could easily leave the United States for a jurisdiction, such as Formosa or Taiwan, with which we have no extradition treaty. He again argued that "the half a million dollars cash bail is an appropriate amount given a 2.7 million dollar theft out of two casino, given the international tenor [sic] and the conspiracy in the group in which Mr. Poon was involved in, and given his major role [in] that particular activity."
The court denied the motion to reduce bail but ordered that in the event the $500,000 bail was posted, a condition "would require the surrender by Mr. Poon to the Attorney General of New Jersey of his passport, pending the completion of the proceedings." The judge also required the surrender of any current Hong Kong identification card.
*91 On August 21, 1987 defendant again moved for reduction of bail. He argued, among other things, that the co-defendants were not being extradited or brought back to New Jersey for trial, that the case was very weak, and that the bail was totally inappropriate in the circumstances. The State again opposed a reduction, noting that the trial "is not going to be held up in any way, shape or form for people coming in from Hong Kong. The State is going to be ready to move on your schedule as you put it forward." The DAG who appeared at the proceedings also indicated that he was informed by the Deputy Attorney General who handled the prior bail proceedings "that immigration agents have apparently been checking into Poon and talked to Mr. Poon. There is extra incentive for Mr. Poon to get out of this country." The D.A.G. further said that he did not know the "status" of defendant's passport, but defense counsel indicated that it would be surrendered as condition of bail pursuant to the court's prior orders.
Defense counsel also stated:
One comment made by counsel I wanted to [dispel]. I'm aware by the Immigration Service that my client has made peace with them by posting a $10,000 bond, so there is not whatever danger that counsel perceives with him, and you're correct that your order does state that we turn in our passport and the identity card, but as we said the last time, if counsel said there is such a document, we are not aware of any such a document. The passport is the only document we have.
Defendant stated that he had lost the identity card.
The court modified the prior order and set "cash bail at $250,000." It was posted by the surety on September 2, 1987 in the form of a cashier's check drawn on the First Jersey Bank.
Two days later, on September 4, 1987, defendant was served with a "Notice to Applicant for Admission Detained for Hearing Before Immigration Judge," requiring a hearing before a United States Immigration Judge for attempting "to enter the United States by fraudulently presenting a counterfeit Alien Registration Card (Form I-151) while knowing that you were not in fact a lawful permanent resident of the United States." Thereafter, and apparently without knowledge of these pending *92 proceedings, on December 21, 1987 the Law Division judge granted a further reduction of bail to $150,000 and ordered that monies previously posted by the surety in excess of $150,000 be returned to her. There is no record before us of any argument on that application or the reasons it was granted.
On February 1, 1988, defendant appeared before a United States Immigration Judge in San Francisco for a hearing. At that time the matter was adjourned until May 24, 1988 so that counsel could prepare. However, the judge in clear terms repeatedly advised both parties that he was going to proceed with the hearing on May 24, 1988.
On February 23, 1988, defendant's motion to dismiss the State Grand Jury indictment and for other relief addressed to the indictment was denied. While the transcript of the proceedings on that motion is not before us, it appears that the motion was not directed to any issue relating to the status of defendant.
However, on May 24, 1988, defendant pled no contest to the charge of entering the United States illegally and was ordered excluded by the immigration judge. At that proceeding, the attorney for defendant advised the court of the criminal proceedings pending in New Jersey, stating "we had hoped and anticipated before today's hearing that those matters would be completed. They have not been completed, Your Honor. It still is [an] outstanding criminal charge related to actions that he took in New Jersey." After discussing the nature of the criminal charges, defendant's attorney stated that he wanted to advise the immigration court of those charges because of the court's direction that the matter proceed that day. He further stated:
However, there is an outstanding indictment. I have been advised from the criminal defense attorney that the matter is not resolved. It may commence as early as June the 6th, but I was advised that it's quite possible that a further adjournment of that matter would occur on that day.
Defendant's attorney asked that the immigration proceeding be continued so that the file could be examined "as pertains to the *93 criminal allegations". Nevertheless, counsel added that if his request was denied he was prepared to go forward even though the Immigration and Naturalization Service file had not been reviewed. Defendant then "conceded" that he "did attempt to make an entry at Niagara Falls using a fraudulent green card." There were further discussions about the nature of the immigration charges and defendant admitted his illegal entry. In response to a question from the immigration judge, defendant made "no application for relief". However, his attorney again advised the court there was a pending criminal matter, stating "... we're only advising you that there is a pending criminal matter. If you  if you desire to enter your decision notwithstanding that matter, we'll  we'll accept that decision today." A decision was thereupon rendered and defendant was excluded from the United States because of an illegal entry by means of fraudulent documents. He indicated no desire to appeal, and the decision was made "final".
Defendant subsequently failed to appear for trial in the Law Division on June 6, 1988, at which time a bench warrant was issued and bail forfeited. On February 6, 1989, defendant moved to dismiss the indictment, to vacate the bench warrant and set aside the forfeiture, and for the return of all monies to the surety. By cross-motion the County moved for judgment on the forfeiture. The record contains an affidavit filed by the surety, through defendant's counsel, apparently with respect to the motion to vacate the forfeiture. It stated, among other things:
5.... Having raised and deposited a gross sum of $250,000 in cash with Atlantic County, I knew that the money would be subject to forfeiture on specified conditions. The conditions, as I understood them, required the return of my bail money as long as my brother appeared in Court when so directed by the Court. I further understood that my brother had to voluntarily refuse to appear or voluntarily violate one of the other conditions of his bail before my money, and that of my family, would be forfeited.
6. I know that on May 24, 1988 my brother was deported to Hong Kong. I also know that his defense attorney and the Deputy Attorney General, knew that he was going to be deported on May 24, 1988. I additionally know that the *94 Deputy Attorney General's response to that information was "deportation was okay with him".
7. In sum, my brother did everything in his power to appear in the State of New Jersey and comply with the Order of the New Jersey Courts. His deportation on May 24, 1988 was not of his own doing, but was instead an act of the Federal Government. To forfeit the bail money would not serve to punish Albert Poon but would instead result in the loss of my family's life savings. Given the reason for my brother's non-appearance, I respectfully demand that the court release the bail money posted on September 2, 1987 so that my family and myself are not made to suffer for acts beyond our control.
The record also contains an affidavit by defense counsel, dated March 22, 1989, indicating that he had previously sought a trial date because he had known about the pending deportation proceedings which he had called to the attention of the Attorney General and that he had requested a speedy trial because of the impending deportation hearing. In his affidavit, counsel stated:
5. Prior to Albert Poon's initial appearance before the Immigration Judge on February 1, 1988, I spoke directly with his Immigration attorney, Mr. Berry. Mr. Berry sought and was granted a postponement of the Immigration hearing largely because of the outstanding New Jersey indictment. Mr. Berry advised that on the next scheduled date, May 24, 1988, the Immigration Judge would most likely deny any further continuances. I conveyed these facts to the Deputy Attorney General on or about May 18, 1988. The State was simply unconcerned with the deportation of Albert Poon.
6. The likelihood of my client's deportation led me to engage in extensive negotiations with the Attorney General's Office in an attempt to resolve this case through plea and/or forfeiture agreement. At one point, namely May 18, 1988, I believed that the matter would be settled on the following day. I immediately telephoned my client, who then expended substantial sums to fly to New Jersey and enter a plea. My client arrived and the offer was withdrawn by the Attorney General's office on May 19, 1988, given the unavailability of superiors to authorize any agreement. Even after my client's deportation, two further bona fide attempts were made to settle the matter ... Both were rejected by the Attorney General's office ...
In conclusion, there has been no verifiable progress with extradition of all defendants from Hong Kong, the indictment is two years old, and there is no basis to conclude that the State will be prepared to try the case any time in the near future.
After argument on April 7, 1989 the court entered judgment in the amount of $150,000 in favor of the County against defendant and ordering that the deposit of the $150,000 be transferred to the Treasurer of the County. By order dated April 11, *95 1989, defendant's motion to refund the bail was denied, but his motion to dismiss the indictment was granted "unless the court, on motion by the State, determines before [June 30, 1989] that the State has demonstrated sufficient modified efforts to assure the presence of all defendants for trial within a reasonable period of time." The order further stated that the dismissal "is without prejudice to the State to indict any and all defendants within any applicable Statute of Limitations."[2]
In denying remission on April 7, 1989 the judge stated that "if it had been represented to me when I was considering the several applications for bail in this matter, that the man was in this country illegally, I would never had set bail at the level I did. And it was never affirmatively represented to me that he was legally in this country, but it was certainly an impression I was given." The judge also stated:
Nobody told me that his immigration status was under challenge, as he could have and should have, that he knew at the time that he had no legal basis to be in the country, and it was on those representations that I set the bail that I set.
The judge rejected the significance of defendant's contention that no deportation hearing was scheduled when bail was reduced, and noted that neither the State nor the surety intervened in the deportation proceedings. The judge noted that the surety had an "obligation" to appear at the deportation hearing for the "protection of [her] money."
In essence the judge denied remission because "bail in this matter was set on the representations that the defendant knew not to be true ..." and because bail was set with the thought that holding defendant's passport and "green card" would be sufficient to prevent his departure from the country. The judge stated:
I am satisfied that the defendant was excluded  I call it deported, the proper term apparently is excluded  by reason of his own conduct, and phonying his registration card upon original entry to this country. I'm satisfied he was *96 aware of that at the time he made application before me for the setting and modification of bail. I am satisfied that he knew and should have advised both the Court an his surety of those facts, and I am satisfied that the surety knew or should have known of the exclusion proceeding then existent against the defendant and could have intervened in those proceedings, successfully or otherwise, to assert her interest in seeing to it that the defendant was here. I am satisfied that the surety, further, had an affirmative obligation before the exclusion proceeding and when she knew or should have known that they were pending, to bring that matter expressly to the attention of the Court to seek relief prior to the time  from this Court, prior to the time that the defendant was, in fact, excluded.
* * * * * * * *
... I am satisfied it was as a result of the defendant's conduct, and that the surety, for the reasons indicated, has likewise forfeited her interest. I am satisfied that she, of course, has a claim and cause of action for indemnification as against the defendant. I am entering the county requested judgment in the form submitted for all of those reasons.
The record contains no further information concerning the status of the indictment, although we are told in the briefs and at oral argument that the matter remains "active without any of the defendants within the State's jurisdiction".

II.
This is not a case involving a defendant who was released on bail and arrested on new criminal charges thereafter. Nor is it a case where defendant was released on bail and subsequently tried and incarcerated on charges pending at the time bail was set. Nevertheless this case has aspects both similar and dissimilar to the traditional cases involving the issue of bail forfeiture and remission. On the one hand, it is clear that before bail was posted the Attorney General knew and advised the court of the existence of a pending immigration investigation with respect to Poon's status. In that context, the possibility of Poon's detention by the Immigration and Naturalization Service, if not his possible exclusion or deportation, was known to the authorities at the time bail was reduced and posted. On the other hand, the actual immigration complaint was not filed until after bail was posted and defendant was released from custody in New Jersey.
*97 Rule 3:26-6, regarding forfeiture of bail, requires that upon a "breach of a condition of a recognizance, the prosecuting attorney shall move the court for a declaration of forfeiture of the bail, and the clerk of the court shall forthwith send notice of the forfeiture to the county counsel ... who shall forthwith proceed to collect the forfeited amount." R. 3:26-6(a). The Rule further provides that a forfeiture can be set aside "if its enforcement is not required in the interest of justice upon such conditions as it imposes," R. 3:26-6(b), and that "[w]hen a forfeiture is not set aside, the court shall on motion enter a judgment of default and execution may issue thereon." Further, "[a]fter entry of such judgment, the court may remit it in whole or in part in the interest of justice." R. 3:26-6(c). See also R. 3:26-7, permitting exoneration "by a timely surrender of the defendant into custody" which was not attempted here; N.J.S.A. 2A:162-7, -8.
After defendant's non-appearance, "[i]t is the defendant's and surety's burden to prove that it would be inequitable to insist upon the forfeiture and that forfeiture is not required in the public interest." Pressler, Current N.J. Court Rules, comment, R. 3:26-6(a) (1990 edition at 649). See State v. Fields, 137 N.J. Super. 76, 81, 347 A.2d 810 (App.Div. 1975). Thus, our rules and case law permit a remission or exoneration, in whole or part, when it is equitable to do so in the totality of circumstances.
The leading Supreme Court decision on bail forfeiture is State v. Peace, 63 N.J. 127, 305 A.2d 410 (1973). In that case defendant failed to appear for trial. However, the surety discovered defendant's whereabouts "and persuaded her to return to court" about seven weeks later. The trial court refused to vacate the $5000 forfeiture and to remit any of the proceeds, but we modified the forfeiture "to the extent of $2,000 (less the State's expenses of $215)". The Supreme Court found that we did not abuse our discretion in not remitting more of the forfeited bail, and so concluded because "[t]here is an intangible element of injury to the public interest in almost *98 any case where a defendant deliberately fails to make an appearance in a criminal case." 63 N.J. at 129, 305 A.2d 410 (emphasis added). In its opinion the Supreme Court recognized that the criteria set forth in State v. Hyers, 122 N.J. Super. 177, 299 A.2d 748 (App.Div. 1973), appeal after remand 126 N.J. Super. 259, 314 A.2d 72 (App.Div. 1973), controlled with regard to the issue of remission of forfeiture.
In Hyers, defendant did not report to serve his sentence after an unsuccessful appeal, but was found in Illinois by the collateral surety. Defendant then waived extradition and was returned to New Jersey. The county indicated that it would be "satisfied with reimbursement for its expenses in returning Hyers" and for the expenses of county counsel in litigating the matter, but the trial judge refused to vacate the forfeiture in whole or part. 122 N.J. Super. at 179, 299 A.2d 748. We remanded for a hearing and spelled out the factors to be considered with respect to the issue of remission:
The determination to be made is essentially equitable in nature and should include: (a) whether the applicant is a commercial bondsman; (b) the bondsman's supervision, if any, of defendant during the time of his release; (c) the bondsman's efforts to ensure the return of the fugitive; (d) the time elapsed between the date ordered for the appearance of defendant and his return to court; (e) the prejudice, if any, to the State because of the absence of defendant; (f) the expenses incurred by the State by reason of the default in appearance, the recapture of the fugitive and the enforcement of the forfeiture; (g) whether reimbursements of the expenses incurred in (f) will adequately satisfy the interests of justice. [122 N.J. Super. at 180, 299 A.2d 748].
On the remand the trial judge again denied any remission of the $5000 forfeiture; the expenses were found to amount to $1,054. On the subsequent appeal, we ordered remission of $3500, all but $1500 constituting the costs plus a "penalty [which] should be imposed". We stated that "appellants made all reasonable efforts to locate defendant which ultimately bore fruit, and the State suffered no prejudice." 126 N.J. Super. at 260, 314 A.2d 72.
State v. Fields, 137 N.J. Super. 79, 347 A.2d 811 (App.Div. 1975), notes the significance of defendant's arrest on new charges following his release on bail. After his indictment, *99 Fields failed to appear for trial and bail was forfeited. Although proof in the record was inadequate, counsel therein advised this court during argument that defendant had not been given permission to leave New Jersey and had committed a new crime when he reached Florida, where he remained in prison. On the appeal by the commercial surety, we stated:
Upon the record before us the county's only burden was to prove that Fields did not appear on the trial date and that his bail was forfeited. It was appellant's and Fields' burden to prove that it was inequitable to insist on the forfeiture and that the forfeiture was not required in the interest of justice. [Citations omitted]. That burden appellant failed to support. The mere fact that defendant is imprisoned in Florida is not sufficient to relieve the forfeiture in whole or in part, especially if he left New Jersey without permission, or is jailed for a new crime. [137 N.J. Super. at 81, 347 A.2d 811].
In State v. Erickson, 154 N.J. Super. 201, 381 A.2d 72 (App. Div. 1977), the defendant failed to appear for arraignment and bail was forfeited. A motion to vacate the forfeiture was granted, conditioned upon the surety's payment of $1000 costs. We reversed and entered an order granting remission of all but $100 because it appeared that defendant was arrested and in another county jail after his release and because his attorney had "kept the authorities advised of his whereabouts at all times." 154 N.J. Super. at 203, 381 A.2d 72. It was further conceded that "no money had been expended as a result of [defendant's] failure to appear at the arraignment...." At 203, 381 A.2d 72. We commenced our consideration of the remission issue by noting that:
[t]he mere fact that a defendant is imprisoned in another state is not sufficient to relieve a forfeiture in whole or part. State v. Fields, supra at 81 [347 A.2d 811]. It is the same as if he had left the state and refused of his own volition to return [citation omitted]. It has long been accepted that the duty of one state to surrender the principal of a bail to another state is not absolute and unqualified, and, therefore, out-of-state incarceration of a defendant does not protect a surety. [At 204, 381 A.2d 72].
We nevertheless found the same principle inapplicable to incarceration in another county of the same state. We stated:
[t]he accepted rule is that a subsequent arrest and imprisonment in the same state, although in another county, will relieve a defendant from appearing at the time and place stipulated. The very same state government which has held *100 defendant amenable to a charge in one county, has by law taken jurisdiction or custody of him in another county ...
Jurisdictions which have held that incarceration in another county does not prevent forfeiture of bail have generally done so on the basis that the court was not timely informed, or the sureties had not shown sufficient diligence in having the matter procedurally taken care of by the authorities, thereby prejudicing the state. [At 204-205, 381 A.2d 72].
Because the defendant was confined in the jail of another county of this state, no costs were incurred and the State suffered little prejudice, we ordered remission in Erickson.
In State v. Weissenburger, 189 N.J. Super. 172, 459 A.2d 693 (App.Div. 1983), defendant and the prosecutor agreed that defendant could leave the jurisdiction in the event of a threat on his life following his cooperation with the prosecutor. When defendant failed to appear as ordered by the court, we reversed an order for partial remission and ordered remission of the full amount of the forfeited bail, stating that the agreement and authorization unknown to the surety "materially increased the surety's risk, whether or not defendant ultimately exercised his discretion properly." At 175, 459 A.2d 693.
Finally, in State v. Childs, 208 N.J. Super. 61, 504 A.2d 1212 (App.Div. 1986) certif. den. 104 N.J. 430, 517 A.2d 423 (1986), we affirmed the denial of any remission, stating that:
According to the prosecutor, defendant's failure to appear and disappearance necessitated six adjournments of the trial and three weeks of investigation as to his whereabouts before he was apprehended. The trial court correctly observed that there was no indication that defendant's mother [the surety] played any role whatsoever in assisting the State in locating defendant. That defendant's mother was not a commercial bondsman did not relieve her of her supervisory responsibility over defendant during his release or her obligation to have aided the police in his apprehension and return to custody. 208 N.J. Super. at 64-65, 504 A.2d 1212.
Hence, the New Jersey authorities reflect that remission can be ordered where the criminal defendant and surety sustain their burden of showing that the equities justify the remission. Where the equities justify only a partial remission, total remission is inappropriate. Where the burden is not sustained, no remission is justified.

*101 III.
We recognize that this case is distinguishable from the relevant New Jersey precedent permitting remission because defendant never returned to New Jersey after the forfeiture and before the application for remission was made. In other words, the precedents reflect that the defendant has always returned to the state, voluntarily or involuntarily, before remission has been ordered in whole or in part. As a result, it can be suggested that the surety has no right to seek even a partial remission before the defendant surrenders to the prosecuting forum. However, in these circumstances where the defendant could not be returned to New Jersey, even by extradition or under the Interstate Agreement on Detainers because he had been deported, we feel it inappropriate to adopt a per se rule prohibiting any remission. Cf. United States v. Egan, 394 F.2d 262, 265-266 (2d Cir.1968) ("The arrest of the defendants by the Immigration and Naturalization Service did not ipso facto operate as a discharge of the surety's obligation as a matter of law.... Had the surety been called upon to produce the defendants while they were incarcerated in connection with the Immigration charge and could not do so because of their imprisonment, [the surety's claim that its performance had been rendered impossible requiring exoneration] might have some merit"), cert. den., sub. nom. Stuyvesant Ins. Co. v. United States, 393 U.S. 838, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968). That is particularly true if the indictment was dismissed for reasons not related to defendant's non-appearance. Further, the State's position regarding the need for defendant's return to the forum for prosecution should be a factor in deciding the equities of a remission; the equities might be different if the State elects, for example, not to extradite or return a defendant for prosecution under the Interstate Agreement on Detainers when it can do so. Cf. Reese v. United States, 76 U.S. (9 Wall) 13, 19 L.Ed. 541, 544 (1869); compare Taylor v. Taintor, 83 U.S. (16 Wall) 366, 21 L.Ed. 287 (1873). Moreover, if the State still seeks to prosecute the co-defendants in this case, the prejudice it suffers *102 by defendant's non-appearance at the trial of a joint indictment should be developed of record.
That is not to say, however, that defendant's non-appearance and continued absence from this jurisdiction, preventing his own prosecution, are not factors which should be considered with respect to the application for remission.[3] The efforts of the defendant and the surety to return defendant to this jurisdiction are relevant in determining the equities. We do not know, for example, if defendant's position not to strenuously oppose the deportation or to appeal the order of the immigration judge was "deliberate" in the sense that he decided not to fight deportation in order to avoid returning to New Jersey and possible incarceration here. Nor does the record adequately reflect the efforts, if any, of the surety to prevent deportation until after defendant's return here or to request a delay of the immigration proceedings until after disposition of the charges here. While counsel argues that the surety made reasonable efforts to cause the return of defendant to New Jersey at relevant times, those efforts are not detailed on the record.
In essence, we deem the efforts of all parties to be relevant to a consideration of the equities. However, the record before us does not detail what efforts, if any, were actually made by defendant, his New Jersey counsel, the surety, or the Attorney General either with defendant's attorney in the immigration proceedings or with the Immigration and Naturalization Service itself. The affidavit of defendant's New Jersey counsel asserts that there was an endeavor to have the New Jersey proceedings concluded before the deportation, and an endeavor to have the deportation proceedings adjourned pending disposition of the New Jersey case. However, the record of the Immigration and *103 Naturalization proceedings is not necessarily consistent with that interpretation.
Defendant was ultimately excluded from this country after declining to contest the charges relating to his illegal entry. He was, therefore, not free to return to New Jersey. His position at the immigration hearing related thereto, and the efforts (or lack of same) of both the State and the surety to secure defendant's return to New Jersey before deportation, or pending the deportation proceedings, are all relevant in considering whether the surety is entitled, under the equitable principles announced in Peace and Hyers, supra, to a partial or total remission of the forfeiture.
It is clear that defendant and the surety did not sustain their burden on the application for remission and that the motion judge may have denied remission on his assessment of the equities. However, he put undue emphasis on his incorrect recollection that bail had been fixed without knowledge of any pending immigration problems. Further, he appears to have entertained and at least conditionally granted defendant's motion to dismiss the indictment for reasons unrelated to defendant's non-appearance. Under the circumstances, we are constrained to remand the matter for further development of the record and full exploration of all the relevant factors.
The matter is remanded to the Law Division for a hearing consistent with this opinion.
NOTES
[1] We have utilized this caption consistent with that employed in the trial court and notice of appeal. We do not comment on its propriety or upon any question related to service upon the surety.
[2] We do not understand the continuing jurisdiction of the court to consider defendant's applications in light of his non-appearance and forfeiture. See State v. Rogers, 90 N.J. 187, 447 A.2d 537 (1982).
[3] Iaria v. Public Service Mutual Ins. Co., 31 N.J. 386, 157 A.2d 686 (1960), relied upon by the county, is distinguishable because it involved a civil action by a judgment creditor against the surety after a defendant's deportation, and the opinion addressed the impact of relevant statutes in a civil action commenced by capias ad respondendum. See N.J.S.A. 2A:15-41 through -47.