**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2174-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NELSON MALDONADO,
WANDA REYNOSO, and
FINANCIAL CASUALTY
& SURETY, INC.,

     Defendants,

and

ABLE BAIL BONDS,

     Defendant-Appellant.

_____

Argued January 16, 2019 – Decided April 26, 2019

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-07-2207.

Robert M. Rosenberg argued the cause for appellant (Ted M. Rosenberg, attorney; Robert M. Rosenberg, on the briefs).

Patrick J. C. Scaglione, Assistant County Counsel, argued the cause for respondent (Courtney M. Gaccione, Essex County Counsel, attorney; Patrick J. C. Scaglione, on the brief).

PER CURIAM

Financial Casualty & Surety, Inc. (Financial), through its agent Able Bail Bonds (Able), posted a $75,000 bail to secure the release of Nelson Maldonado. He was charged with second-degree possession with intent to distribute a controlled dangerous substance, marijuana, in a quantity of five pounds or more but less than twenty-five pounds, N.J.S.A. 2C:35-5(b)(10)(b), and fourth-degree possession of marijuana in a quantity of more than fifty grams, N.J.S.A. 2C:35-10(a)(3). Financial appeals from the December 7, 2017 order forfeiting the entire amount of the bond as a result of defendant's failure to appear. We now vacate the order of forfeiture and remand for the court to engage in a more detailed analysis, one including findings of fact and conclusions of law, before entry of a final judgment.

The facts are undisputed. Able posted the bond on defendant's behalf on June 8, 2016. Defendant, a United States citizen, was required to surrender his

passport.[1]  Between the date of his release and December 2016, Able telephoned defendant, his wife, or his mother on a monthly basis.  Able left voice messages when no one was available.  Although required to maintain bi-weekly phone contact with Able, defendant never called the agent.  Able did obtain the dates defendant was expected to appear in court.  Defendant appeared as required on July 15, 2016, and August 5, 2016.[2]

In December, defendant's wife advised Able that defendant had moved to the Dominican Republic and did not intend to return.  She also gave the agent an address, which she alleged was his new home.  Able hired investigators, who confirmed that defendant was in the Dominican Republic, having flown there from New York City on November 29, 2016.  The investigators provided the passport number defendant used to travel.  In the intervening months before the forfeiture hearing, the State notified Able that it would not seek to extradite defendant because of the nature of the charges.

---

[1]  The relevant section of the New Jersey Bail Recognizance filed with the trial court and included in the appendix is illegible.  Financial's brief asserts it required defendant to surrender his passport as a special condition of bail.  The State does not dispute the claim in its brief.

[2]  Financial supports the claim that defendant appeared in court by reference to a document captioned "New Jersey Superior Court."  The document does not indicate any court events.  However, the State does not dispute the chronology.

A-2174-17T1

After considering the argument of counsel at the forfeiture hearing, the judge said:

> . . . ultimately the bail bondsman's responsibility is to ensure that his client comes to court when required and in this particular instance [defendant] elected to flee the United States and go to the . . . Dominican Republic.
>
> And while it's true that the State has a card that they can exercise to get him back here, because of the type of case, if it was a homicide it might be different but, because it's a CDS marijuana case, they're not . . . going to expend the resources to do that.
>
> [I]n this court's estimation, that doesn't absolve the bail bondsman of his responsibility and obligation to produce [defendant] nonetheless.
>
> And the fact of the matter is while I understand that this is a $75,000 bond, the bail bondsman's client, [defendant], voluntarily fled the jurisdiction, and that's on the bail bondsman.
>
> So . . . contractually, the bail bondsman was required to produce [defendant], they were unable to do so, and that's the risk that the bail bondsman took on [defendant] and it didn't work out for the bail bondsman, and the entire $75,000 should, therefore, be forfeited. That's at least in this court's estimation, and that's the only equitable thing to do.
>
> To . . . negotiate some number less than that doesn't seem to be equitable to this court . . .
>
> . . . .

4

[T] hat's the risk that the bail bondsman took and, therefore, the court is not willing to accept anything less than the full [seventy-five].

On appeal, Financial raises the following points:

POINT I
THE TRIAL COURT ERRED BY FAILING TO CONSIDER WHETHER THE STATE HAD A DUTY TO MITIGATE ITS DAMAGES.

POINT II
THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CONSIDER ANY OF THE GENERAL FACTORS GOVERNING REMISSION AND AN ANALYSIS OF SAME WOULD REQUIRE THE EXONERATION OF THE SURETY.

A.   Nature of the Applicant.
B.   Bondsman's Supervision of the Defendant.
C.   Bondsman's Efforts to Ensure the Return Of the Fugitive.
D.   Trial Court Erred by Re[f]using to Consider That The Defendant Could Almost Immediately Be Back in New Jersey.
E.   Prejudice To The Prosecution Of The Criminal Defendant.
F.   Trial Court Erred By Refusing to Consider the State's Actual Expenses Incurred As A Result of the Defendant's Failure To Appear.
G.   Intangible Element Of Harm to the Community And Commission of Crime While A Fugitive.

"[T]he decision to remit bail and the amount of remission are matters within the sound discretion of the trial court to be exercised in the public interest." State v. Harmon, 361 N.J. Super. 250, 254 (App. Div. 2003); State v.

5

<u>De La Hoya</u>, 359 N.J. Super. 194, 198 (App. Div. 2003). "The exercise of that discretion must, however, be informed by the standards articulated by the courts[.]" <u>Harmon</u>, 361 N.J. Super. at 254. Those standards include "the necessity to provide a reasonable incentive to the surety to attempt the recapture of the non-appearing defendant and to assure that the onus placed on commercial sureties is not so great as to risk the impairment of a defendant's realistic right to post pretrial bail." <u>Ibid.</u>

Bail forfeiture and the amount of such forfeiture is based on application of the principles found in <u>Rule</u> 3:26-6 and the remittitur guidelines enacted by our Administrative Office of the Courts. <u>See</u> <u>Administrative Directive #22-17</u>, "<u>Bail and Bail Forfeitures – Revisions to Procedures and Forms</u>" (Aug. 7, 2017). As always, central to the grant of a discretionary remittitur is consideration of all "factors and policies that are relevant to the equitable exercise of [the court's] discretion." <u>State v. Toscano</u>, 389 N.J. Super. 366, 370 (App. Div. 2007).

We recently addressed the relevant analysis for remission when a defendant flees the country, pursuant to the prior revised remittitur guidelines, in <u>State v. Mungia</u>:

> [I]f a defendant becomes a fugitive and flees to a foreign country, there is a presumption against remission. The surety must make every effort to assist in the re-apprehension of the defendant, including by

locating the defendant in the foreign country. The failure to extradite a located defendant does not excuse the suret[y] from [its] contract with the State, and generally does not justify remission if the State has no ability to obtain extradition of the defendant. However, if the surety locates the defendant in a foreign country, and extradition is possible, but the State elects not to request that the federal government seek extradition, there is no absolute bar against remission. In that situation, the trial court should consider the general factors governing remission.

[446 N.J. Super. 318, 323-24 (App. Div. 2016).]

In this case, however, the court considered only defendant's flight to the Dominican Republic and no other factor. While acknowledging that the State could extradite defendant but chose not to do so, the judge concluded that the State's decision did not absolve the bail bondsman of his responsibility to produce defendant in court. The judge said that defendant's unavailability within the jurisdictional boundaries of the State was "on the bail bondsman." He made reference to forfeiture of the entire amount of bail being "the only equitable thing to do[.]" The judge did not distinguish this case from Mungia, or explain the reason forfeiture of the entire amount was necessary because defendant fled to a foreign country.

Rule 1:7-4 requires a judge in a non-jury proceeding to make findings of fact and state conclusions of law. In the absence of such findings of fact and

7

conclusions of law, obviously, appellate review is not possible.  See Ricci v. Ricci, 448 N.J. Super. 546, 574-75 (App. Div. 2017).  Factfinding is "fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review[.]"  R.M. v. Supreme Court of N.J., 190 N.J. 1, 12 (2007).  Although strictly speaking the judge may have complied with the rule, the discussion did not include application of the explicit fact-finding or relevant law regarding the agent's compliance with its undertakings.  More is required, in fairness to both parties, before we engage in appellate review.  Thus, we are faced with the necessity of a remand.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION